FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 04, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GASPAR V.,<br><br>                    Plaintiff,<br><br>        vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | No. 1:17-cv-03198-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 17, 18 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 17, 18. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion, ECF No. 17, and grants Defendant's Motion, ECF No. 18.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

ORDER - 1

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant

numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On February 21, 2014, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of February 21, 2014. Tr. 46, 194-99. The application was denied initially, Tr. 131-34, and on reconsideration, Tr. 143-45. Plaintiff appeared before an administrative law judge (ALJ) on January 6, 2016. Tr. 42-75. On March 25, 2016, the ALJ denied Plaintiff's claim. Tr. 18-40.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 21, 2014. Tr. 24. At step two, the ALJ found that Plaintiff has the following severe impairments: dysfunction of major joints (knees), obesity, anxiety disorders, affective disorders, and substance addiction disorders. Tr. 24.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 24. The ALJ then concluded that Plaintiff has the RFC to perform sedentary work with the following limitations:

> [Plaintiff] can never climb ladders, ropes or scaffolds, work at unprotected heights, or work with or in proximity to hazards such as heavy machinery. In order to meet ordinary and reasonable employer expectations regarding attendance, production and work place behavior, [Plaintiff] can understand, remember and carry out unskilled, routine and repetitive work that can be learned by

ORDER - 6

demonstration, and in which tasks to be performed are predetermined by the employer. [Plaintiff] can cope with occasional work setting change and occasional interaction with supervisors, can work in proximity to coworkers, but not in a team or cooperative effort, and can perform work that does not require interaction with the general public as an essential element of the job, but occasional incidental contact with the general public is not precluded.

Tr. 26-27.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 32. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as, die loader, final assembler, and patcher. Tr. 33. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of February 21, 2014, though the date of the decision. Tr. 34.

On September 25, 2017, the Appeals Council denied review of the ALJ's decision, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

ORDER - 7

1.   Whether the ALJ properly evaluated Plaintiff's symptom claims; and

2.   Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 17 at 2.

## DISCUSSION

**A. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims. ECF No. 17 at 14-20.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2.[1] "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at

---

[1] At the time of the ALJ's decision on March 25, 2016, the regulation that governed the evaluation of symptom claims was SSR 16-3p, which superseded SSR 96-7p effective March 24, 2016. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 15776, 15776 (Mar. 24, 2016). The ALJ's decision did not cite SSR 16-3p, but cited SSR 96-4p, which was rescinded effective June 14, 2018, in favor of the more comprehensive SSR 16-3p. Neither party argued any error in this regard.

1112. "The claimant is not required to show that [his] impairment could

reasonably be expected to cause the severity of the symptom [he] has alleged; [he]

need only show that it could reasonably have caused some degree of the

symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted). General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims.

*Id*. (quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.

Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

explain why it discounted claimant's symptom claims)). "The clear and

convincing [evidence] standard is the most demanding required in Social Security

cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.

Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting

effects of a claimant's symptoms include: 1) daily activities; 2) the location,

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c)(1)-(3). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

While the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, the ALJ discounted Plaintiff's claims concerning the intensity, persistence, and limiting effects of the symptoms. Tr. 32.

### 1. Manipulation

The ALJ discounted Plaintiff's reported symptoms because the record reflected that Plaintiff exaggerated his symptoms in order to manipulate the disability process. Tr. 28. Evidence of being motivated by secondary gain is sufficient to support an ALJ's rejection of testimony evidence. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). Therefore, the tendency to exaggerate or engage in manipulative conduct during the process is a

permissible reason to discount the credibility of the claimant's symptom claims. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Here, the ALJ found that Plaintiff presented differently during his regular medical and mental health treatment appointments versus evaluations related to benefits. Tr. 28. For example, the ALJ highlighted that Plaintiff wore sunglasses to his Washington State Department of Social and Health Services May 2014 evaluation in order to feel "more protected," but commented that Plaintiff did not wear sunglasses during other mental health treatment sessions, other than when embarrassed about his eyebrows. Tr. 28 (citing Tr. 333). This given reason to discount Plaintiff's anxiety claims is not supported by substantial evidence. Although Dr. Moon noted that Plaintiff wore sunglasses during the interview to "feel more protected," Dr. Moon did not identify Plaintiff's behavior as inconsistent with Plaintiff's anxiety or symptoms. Tr. 628. Rather Dr. Moon noted that Plaintiff presented as anxious and paranoid, identifying discomfort about people's thoughts about the size of his breasts and having difficulties leaving his house and attending appointments and with past job performance. Tr. 628-31. The record also reflects that on another occasion Plaintiff used sunglasses as a "mask," i.e., to hide his eyebrows from view, which were apparently a source of embarrassment for Plaintiff. Tr. 509. Based on this record, reasonable minds would not accept that because Plaintiff

wore sunglasses to his evaluation with Dr. Moon in 2014 that his reported symptoms should be discounted.

Notwithstanding this error, there is substantial evidence to support the ALJ's rational finding that Plaintiff engaged in manipulative and drug-seeking behavior. Tr. 28. *See, e.g.*, Tr. 418 ("The patient is quite manipulative. Definitely appears to use medication as a coping mechanism."); Tr. 435-36 (History of "suspicious use of meds" and "multiple manipulative behavior shown during visit"); Tr. 616-13 (discussing misuse of medication); Tr. 626 ("manipulative"). This was a clear and convincing reason to discredit Plaintiff's reported symptoms. Moreover, Plaintiff failed to challenge this aspect of the manipulative finding. Thus, any challenge is waived. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining the court may decline to address the merits of issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (recognizing that issues not "specifically and distinctly argued" in the party's opening brief on appeal may be disregarded by the court).

### 2. Inconsistent with Plaintiff's Activities

The ALJ also discounted Plaintiff's reported severely limiting symptoms as inconsistent with his activities. Tr. 28. An ALJ may compare a claimant's daily activities against the claimant's testimony and determine if the activities are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007);

*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (assessing whether "a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting"). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, the ALJ found that Plaintiff's alleged severely limiting agoraphobia was inconsistent with his cumulative activities in public areas, such as going out to a bar, exercising at a gym, walking three times a week, seeing his mother on a daily basis, keeping in touch with a friend, living with a partner, attending family gatherings and parties, having an internet account to "hook up" with others, going to church on a regular basis, and being involved in church activities. Tr. 28-29 (citing Tr. 324, 394, 432, 509, 529, 739). The ALJ also highlighted that Plaintiff testified that he performed household chores, such as laundry and washing dishes. Tr. 29 (citing Tr. 64). Finally, the ALJ noted that Plaintiff's providers encouraged him to exercise or increase his level of physical activity, which is inconsistent with Plaintiff's claim that he could not engage in physical activity due to severely limiting pain. Tr. 30 (citing Tr. 392, 424). While a different finding could be

made as to whether the identified activities were "public" activities that were inconsistent with Plaintiff's public anxiety, the ALJ's finding that Plaintiff's activities are inconsistent with his disabling symptoms is a rationale interpretation of the record and is supported by substantial evidence. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). This was a clear and convincing reason to discredit Plaintiff's symptom claims.

### 3. Inconsistent with the Objective Medical Evidence

The ALJ found that the severity of Plaintiff's reported physical and mental-health symptoms were unsupported by the objective medical evidence. Tr. 29-30. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

### i. Physical Symptoms

The ALJ found that the minimal and mild physical examination findings and observed normal, non-distress appearance at medical appointments were inconsistent with Plaintiff's claims of severely limiting pain. Tr. 29. The ALJ's

finding is supported by substantial evidence.  Tr. 376, 443 (noting normal gait and stance and ability to move all extremities); Tr. 406 (While knee was tender after physical assault, the knee appeared normal, motion was normal, and there was no swelling.); Tr. 320, 392, 394, 399, 413, 417, 422, 427 (no acute distress); Tr. 376 (no apparent distress, normal gait and stance, and moves all extremities well); Tr. 410 (normal appearing and alert); Tr. 455 (normal range of motion).  While the record refers to bilateral knee pain arthritis and degenerative changes, Tr. 374, 376, 377, 389-90, 466, 469, 589, it was the ALJ's role to weigh the conflicting evidence.  *See Morgan*, 169 F.3d at 599-600.  The ALJ's finding that the objective medical evidence is inconsistent with Plaintiff's claim that his physical conditions were disabling is rationale and supported by substantial evidence.

ii.    Mental Health Symptoms

The ALJ also found that Plaintiff's anxiety and other mental-health conditions were was not as disabling as he claimed.  Tr. 29.  For instance, the treatment notes indicate that Plaintiff, while sometimes mildly anxious, demonstrated normal affect during examinations and as friendly and cooperative. *See e.g.*, Tr. 319-21, 374, 398-400, 409-11, 416-18, 428-29, 714, 717.  Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed.  *See Rollins*, 261 F.3d at 857.  The ALJ appropriately determined

that the degree of symptoms claimed by Plaintiff was not supported by the objective medical evidence.

### 4. Improvement with Treatment

The ALJ also found that Plaintiff's mental-health symptoms were expected to improve with treatment. Tr. 30. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3) (2011); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (A favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations.). Here, the ALJ's given example to support the finding that Plaintiff's symptoms improved with treatment was that "recent treatment records indicate [Plaintiff] was being tapered off of Xanax." Tr. 30. While Plaintiff was being tapered off of Xanax, it was not because Plaintiff's anxiety was lessened without other medication, rather the prescribed Xanax was being replaced by Wellbutrin, and as a result Plaintiff was being tapered off of Xanax. Tr. 426, 429. However, any error in relying on this example is harmless because the record reflects that Plaintiff's mental-health symptoms improved with Wellbutrin. *See Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115.

Further, the progress made by Plaintiff during his counseling sessions supports the ALJ's finding that treatment compliance lessened Plaintiff's

ORDER - 16

symptoms.  Tr. 489 (noting improvement in anxiety with counseling and medication management); Tr. 449 (noting positive progress).  The ALJ reasonably concluded that the record showed a history of improvement with treatment that was inconsistent with the level of impairment Plaintiff alleged.  This was a clear and convincing reason to discount Plaintiff's symptom claims.

### 5. *Poor Work History*

The ALJ found that Plaintiff's poor work history undermined his allegations about the severity of his symptoms.  Tr. 30.  Evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to discredit a claimant's testimony that he is unable to work.  *Thomas*, 278 F.3d at 959; *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); 20 C.F.R. § 416.929; SSR 96–7.  Here, the ALJ's finding that Plaintiff's earning records demonstrate a history of minimal income is rational and supported by substantial evidence.  *See, e.g.*, Tr. 271, 202-03.  This was a clear and convincing reason to discount Plaintiff's symptom claims.  Moreover, Plaintiff failed to challenge this reason.  Thus, any challenge is waived and the Court may decline to review it.  *See Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000.

### 6. *Inconsistent Statements*

The ALJ discounted Plaintiff's symptom claims because inconsistencies in Plaintiff's statements cast doubt on the reliability of his subjective symptom

testimony. Tr. 28. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability review process with any other existing statements or conduct made under other circumstances. *Smolen*, 80 F.3d at 1284 (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."); *Thomas*, 278 F.3d at 958-59. Here, the ALJ found that medical records demonstrated numerous inconsistences between Plaintiff's allegations and statements that he made to treating and evaluating professionals in regard to why he did not drive, whether he washed his hands excessively, and his social life. Tr. 28. To the extent there may be substantial evidence to support the ALJ's finding in this regard, these inconsistencies were not a clear and convincing reason separate and apart from Plaintiff's above-noted manipulation to discount Plaintiff's reported symptoms.

Plaintiff did offer varying statements over a span of years as to why he did not drive. *See, e.g.*, Tr. 56 (testifying at the hearing that he did not have a driver's license but when he did in 2008 and 2009 "he had to pull over a couple of times because I was like having a panic attack."); Tr. 560, 610 (stating in 2010 that he was able to drive his car if he took a Xanax before driving); Tr. 535 (disclosing in 2010 that he had no driver's license because of his driving offenses); Tr. 557

(listing in 2010 on his disability report under "other" activities that he has "panic attacks," "get rides from family [and the] People for People bus"); Tr. 226 (stating in April 2014 that he had panic attacks when he drove, including sweating and hand shaking); Tr. 333 (reporting to Dr. Moon in May 2014 that his driver's license was suspended due to unpaid fines); Tr. 454 (stating in 2015 that his license was suspended for unpaid tickets but before that he was having panic attacks while driving on a suspended license). To the extent these statements are inconsistent, they are not so inconsistent as to serve as a separate clear and convincing basis apart from the previously discussed manipulation to discount Plaintiff's reported anxiety symptoms.

The ALJ also found that Plaintiff offered inconsistent statements about his mental health symptoms, highlighting that Plaintiff reported excessive handwashing during his mental health assessment in 2014 but on the function report completed a few months later Plaintiff did not mention excessive handwashing, nor did he report excessive handwashing during other mental health evaluations or treatment sessions. Tr. 28 (citing Tr. 223-30). However, Plaintiff reported excessive hand washing and other obsessive compulsive behaviors in 2011 during a psychological evaluation. Tr. 645. And on his function report, which was completed with the help of a third person, Plaintiff disclosed using "hand sanitizer all [the] time to help with cleanliness." Tr. 225. To the extent

these statements were inconsistent, Plaintiff's propensity to exaggerate his symptoms in order to manipulate the disability process was already taken into account by the ALJ.

Finally, the ALJ found that Plaintiff's testimony about his social life was inconsistent because he first testified that he had a "good friend" Suzanna whom he kept in touch with by phone, but then Plaintiff later denied having any friends and mentioned that he only kept in touch with Suzanna by texting her, and because Plaintiff described having other friends during his mental health appointments. Tr. 29 (citing Tr. 517). There is substantial evidence in the record that Plaintiff's "circle of friends" had become small, identifying only Suzanne, a former significant other, and family. Tr. 517 (discussing relationship with former significant other); Tr. 557 ("few friends" and no contact with neighbors"); Tr. 581 ("friends have stayed away from him"); Tr. 645 (mentioning that he has "one or two close friends"); Tr. 283 (reporting that Plaintiff "used to have friends and has none now"). And it is not inconsistent that Plaintiff may have a good friend with whom he only maintains contact via text. However, any error in relying on inconsistent statements as a basis to discount Plaintiff's symptom claims is harmless because the ALJ listed additional clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's symptom claims. *See Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115.

ORDER - 20

*7. Criminal Record*

Finally, the ALJ also noted that Plaintiff had a prior felony that may impact his ability to obtain work. Tr. 30. While a claimant's efforts to work are a factor for the ALJ to consider when evaluating the claimant's symptom claims, *Thomas*, 278 F.3d at 959, the ALJ recognized that criminal convictions are not disability related. Thus, the ALJ did not consider Plaintiff's criminal record in making her decision, but rather simply noted that Plaintiff's records indicate he discussed such concerns with his treating providers. Tr. 30 (citing Tr. 416). Because the ALJ did not discount Plaintiff's symptom claims because of his criminal record, Plaintiff's argument regarding the impermissibility of using his criminal history to discount his symptom claims is without merit.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly rejected the opinions of Jeff Blair, L.M.H.C., and Tae-Im Moon, Ph.D. ECF No. 17 at 4-14.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216.

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527 (2012). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d) (2013). However, the ALJ is required to

"consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

### 1. Mr. Blair

From about June to December 2015, Mr. Blair, a licensed mental health counselor, treated Plaintiff. Tr. 506-07, 509-09, 510-13, 387, 516-17, 524-25, 528-29, 448-49, 458, 452-53. On November 10, 2015, Mr. Blair completed a Mental Source Statement and opined that Plaintiff was 1) moderately limited in his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; 2) markedly limited in the ability to carry out very short simple instructions, interact appropriately with the general public, ask simple questions or request assistance, travel in unfamiliar places or use public transportation, set realistic goals, or make plans independently of others, and 3) extremely limited in the other listed abilities. Tr. 382-85. Mr. Blair noted that this opinion was the opinion of Plaintiff's treatment team and that Plaintiff was "struggling to function at home and in general settings. He is not currently able to

ORDER - 23

work or maintain a work position due to overwhelming anxiety and phobias." Tr. 384-85.

The ALJ assigned no weight to Mr. Blair's opinion. Tr. 31-32. Plaintiff contends that under Social Security Ruling 06-03p. Mr. Blair's opinion must be considered the opinion of Plaintiff's treatment team and therefore the opinion was entitled to controlling weight. ECF No. 17 at 5-6, n.1. The Court disagrees. *Gomez v. Chater* is no longer good law in regard to whether the opinion of an "other source," who is part of an interdisciplinary team, is to be given controlling weight. 74 F.3d 867, 871 (9th Cir. 1996). Instead, because the social security regulations do not provide for the opinion of an "other source" to be given controlling weight even if the other source is supervised by a physician or acts as part of an interdisciplinary team, Mr. Blair's opinion is still considered an "other source" opinion. *See Vega v. Colvin*, No. 14cv1485-LAB (DHB), 2015 WL 7769663 (S.D. Cal. Nov. 12, 2015); *Olney v. Colvin*, No. 12-CV-0547-TOR, 2013 WL 4525402, at *4 (E.D. Wash. Aug. 27, 2013). Therefore, because Mr. Blair was an "other source" under 20 C.F.R. § 416.913(d), the ALJ need only have provided "germane reasons" for rejecting Mr. Blair's findings. *See Molina,* 674 F.3d at 1111.

ORDER - 24

i.     Plaintiff's Self-Reports

The ALJ discounted Mr. Blair's opinion because he relied on Plaintiff's self-reports.  Tr. 31.  Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631.  A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported.  *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957.  Further, a physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted.  *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 604.  However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.  *Ghanim*, 763 F.3d at 1162; *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).  A clinical interview and mental status evaluation are objective measures and cannot be discounted as a "self-report."  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

Here, the ALJ rationally found that Mr. Blair's opined extreme and severe limitations were based on Plaintiff's self-reports and were not supported by the treatment records.  *See, e.g.*, Tr. 387, 506-07, 509-09, 510-13, 516-17, 524-25,

528-29, 448-49, 458, 452-53. On Mr. Blair's treatment notes, the "Subjective" comments reflect Plaintiff's reported symptoms, while the "Objective" notes reflect Mr. Blair's largely minimal observations. *See, e.g.*, Tr. 507 ("Objective: [Plaintiff] participated actively, was candid and reported to appreciate therapist's approach."); Tr. 513 ("Objective: [Plaintiff] participated actively and was able to calm down and talk throughout session."); Tr. 517 ("Objective: [Plaintiff] participated actively and had a good attitude. He was open to suggestions and trying out interventions."). Moreover, to the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts between Plaintiff's self-reports, Mr. Blair's treatment notes, Mr. Blair's functional opinions, and the remaining record. *See Morgan*, 169 F.3d at 599-600. The lack of an articulated objective medical basis for these opined limitations is a germane reason for discounting Mr. Blair's opinion.

ii. An Opinion Reserved for the Commissioner

Finally, the ALJ discounted Mr. Blair's opinion that Plaintiff is unable to work because that is an issue reserved for the Commissioner. Tr. 32 (citing Tr. 385). A statement by a medical source that a claimant is "unable to work" is not a medical opinion and is not due "any special significance." 20 C.F.R. § 416.927(d). Nevertheless, the ALJ is required to consider medical source opinions about any issue, including issues reserved to the Commissioner, by evaluating the opinion in

light of the evidence in the record and applying the applicable 20 C.F.R. § 416.927(d) factors. SSR 96-5p at *2-3. Here, even though Mr. Blair is not a medical source, the ALJ considered Mr. Blair's opinion and treatment notes. As discussed above, the ALJ rationally found that Mr. Blair's opined limitations were not supported by the record. The ALJ appropriately discounted Mr. Blair's opinion that Plaintiff was unable to work for a germane reason.

### 2. Dr. Moon

On May 6, 2014, Dr. Moon evaluated Plaintiff. Tr. 333-37, 628-33. Dr. Moon diagnosed Plaintiff with social anxiety disorder, dysthymic disorder, learning disorder (not otherwise specified), and rule-out borderline intellectual functioning. Tr. 630. Dr. Moon opined that Plaintiff was markedly limited in his ability to understand, remember, and persist in tasks by following either very short and simple instructions or detailed instructions; perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances without special supervision; learn new tasks; adapt to changes in a routine work setting; communicate and perform effectively in a work setting; complete a normal work day and work week without interruptions from psychologically based symptoms; maintain appropriate behavior in a work setting; set realistic goals; and plan independently; and otherwise moderately limited in the listed basic work activities. Tr. 630-31.

The ALJ assigned little weight to Dr. Moon's opinion. Tr. 31. Because Dr. Moon's opinion was contradicted by the opinions of Dr. Edward Beaty and Dr. John Robinson, Tr. 102-14, 116-28, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Moon's opinion. *See Bayliss*, 427 F.3d at 1216.

### i. Inconsistent with Plaintiff's Daily Activities

The ALJ discounted Dr. Moon's opinion because Dr. Moon's marked limitations were inconsistent with Plaintiff's activities. Tr. 31. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan*, 169 F.3d at 601-02. If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113.

Here, Plaintiff contends the ALJ failed to explain what activities were inconsistent with which of Dr. Moon's findings and therefore the ALJ failed to issue a decision that allows for meaningful review. ECF No. 17 at 10-11. While the ALJ briefly stated Dr. Moon's "numerous marked limitations in this evaluation are inconsistent with [Plaintiff's] activities" in this particular paragraph, the ALJ previously detailed how Plaintiff's activities were inconsistent with his alleged

ORDER - 28

severely limiting symptoms. Tr. 28-29, 31. The Court can meaningfully review

the ALJ's decision and, while a different interpretation of the evidence could have

been reached as to whether Plaintiff's activities were inconsistent with his reported

symptoms, the ALJ's finding is rationale and supported by substantial evidence.

*See Morgan*, 169 F.3d at 599-600. The record reflects that Plaintiff visited night

clubs, Tr. 509, 394; had an account for "hooking up," Tr. 529; helped care for his

mother, Tr. 324; attended family gatherings and parties, Tr. 432; went to the gym

to exercise, Tr. 324; and regularly attended church, Tr. 739. This was a legitimate

and specific reason to discount Dr. Moon's opinion. Moreover, even if the ALJ

erred in discounting Dr. Moon's opined limitations, the RFC limits Plaintiff to

unskilled, routine, repetitive, sedentary work with no required general public

interaction, no team or cooperative work with coworkers, and occasional

interaction with supervisors. Tr. 27. *See Stubbs-Danielson v. Astrue*, 539 F.3d

1169, 1174 (9th Cir. 2008).

     ii.  Inconsistent with the Normal Psychiatric Observations

    The ALJ also discounted Dr. Moon's opinion because these marked

limitations were inconsistent with the normal psychiatric observations. Tr. 31. A

factor to evaluating any medical opinion includes the amount of relevant evidence

that supports the opinion. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.

Here, Plaintiff again argues the ALJ failed to explain the basis for his finding that

ORDER - 29

Dr. Moon's opinion was inconsistent with the normal psychiatric observations. ECF No. 17 at 10-12. This argument is not persuasive because the ALJ in another portion of the decision detailed the "regular notations" in Plaintiff's "treatment notes of normal psychiatric observations [that were] inconsistent with the allegations of severely limiting mental health symptoms." Tr. 29, 31. For instance, the treatment notes indicated that Plaintiff, while sometimes mildly anxious (which was often related to getting his medications refilled), demonstrated normal affect during examinations and was friendly and cooperative. *See e.g.*, Tr. 319-21, 398-400, 409-11, 416-18, 428-29 (treating provider notes); Tr. 374 (describing Plaintiff as friendly, cooperative, and under no apparent distress during a consultation appointment for bariatric surgery); Tr. 714, 717 (noting that Plaintiff, while incarcerated, did not appear to be under distress and showed no obvious signs of anxiety or depression). There is substantial evidence supporting the ALJ's rationale decision that the record reflected normal psychiatric observations, which were inconsistent with Dr. Moon's opined limitations. Plaintiff contends though that the evidence relied on by the ALJ only had to do with his physical evaluations. However, Plaintiff was regularly evaluated by PAC Jason Redd to determine whether medications should continue to be prescribed for anxiety and depression. Therefore, the relied-on records were not just for physical evaluations but also for mental-health evaluations. *See e.g.*, Tr. 319-21, 398-400,

409-11, 416-18, 428-29.  This was a specific and legitimate reason to discount Dr.

Moon's opinion.  The ALJ's finding is rationale and supported by substantial

evidence.

          iii.     Inconsistent with the Mental Status Examinations

The ALJ also discounted Dr. Moon's opinion because Dr. Moon's marked

limitations were inconsistent with the observations of Plaintiff's treating providers

during his mental status examinations.  Tr. 31.  The amount of relevant evidence

that supports a medical opinion, the quality of the explanation provided in the

opinion, and the consistency of a medical opinion with the record as a whole are

factors for the ALJ to consider.  *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at

631.  Again, Plaintiff argues the ALJ failed to explain the basis for her finding that

Dr. Moon's opinion is inconsistent with the mental status examinations of

Plaintiff's treatment providers.  ECF No. 17 at 10-12.  While the ALJ previously

discussed mental status examinations performed by Plaintiff's treating providers,

Tr. 29-30, thereby permitting the Court to meaningfully review the ALJ's finding

in this regard, the Court finds the ALJ's finding is unsupported by substantial

evidence.  The ALJ stated that "[t]reating providers indicated [Plaintiff]

demonstrated no significant or notable concerns related to thought process or

content, memory, attention, judgment, or cognition," and cited Dr. George

Petzinger's November 24, 2015 examination.  Tr. 29.  The ALJ's summary of Dr.

ORDER - 31

Petzinger's examination is accurate. Tr. 454-56. However, the ALJ did not identify other similar mental status examinations by treating providers—and the Court did not find similar mental status examination findings by other treating providers. For instance, in July 2015, Daniel Pitts, ARNP, treated Plaintiff and noted that while Plaintiff was pleasant, cooperative, and claim, with fair insight and judgment, Plaintiff "presented as very disorganized in thought and in action. He has a hard time with focus and memory." Tr. 481-82. And in January 2015, Jorge Torres-Saenz, Psy.D. noted on an integrated biopsychosocial assessment form that Plaintiff had a poor recent memory and brief concentration. Tr. 500. Any error however by the ALJ in relying on this factor to discount Dr. Moon's opinion is harmless because the ALJ provided other specific and legitimate reasons to discredit Dr. Moon's opinion. *See Molina,* 674 F.3d at 1115. Moreover, the RFC limits Plaintiff to unskilled, routine, repetitive, sedentary work with no required general public interaction, no team or cooperative work with coworkers, and occasional interaction with supervisors. Tr. 27. *See Stubbs-Danielson*, 539 F.3d at 1174. Thus, the RFC incorporates Dr. Moon's opined limitations to the extent they are supported by the record.

      iv.    Plaintiff's Presentation during Examination

The ALJ discounted Dr. Moon's opinion because Plaintiff attempted to portray himself with greater mental-health symptoms than he was actually

experiencing during his examination with Dr. Moon.  Tr. 31.  Evidence that a

claimant exaggerated his symptoms is a clear and convincing reason to reject the

doctor's conclusions.  *Thomas,* 278 F.3d at 958.  Here, there is substantial evidence

that Plaintiff attempted to portray himself with greater mental health symptoms

when he presented for benefits examinations, including his evaluation with Dr.

Moon, as opposed for regular treatment.  For instance, Plaintiff reported to Dr.

Moon that he had hallucinations and delusions.  Tr. 337, 632.  However, while

during benefits evaluations and initial assessments Plaintiff reported auditory

hallucinations, *see, e.g.,* Tr. 296-97, 324, 366, 646, Plaintiff did not report

hallucinations or delusions during regular treatment sessions, *see, e.g.*, Tr. 357,

448-49, 452-53, 458, 627, 666.  The ALJ's decision to discount Dr. Moon's

opinion because it was based in part on Plaintiff's presentation and reported

symptoms, including hallucinations and delusions, is supported by substantial

evidence.  Dr. Moon's report reflects that her opinion was based to a large extent

on Plaintiff's self-reports, rather than clinical and comprehensive medical

examinations.  *Cf. Ghanim*, 763 F.3d at 1162.  This was a specific and legitimate

reason to discount Dr. Moon's opinion.

     *3.  John Robinson, Ph.D. and Edward Beaty, Ph.D.*

     Dr. Robinson and Dr. Beaty reviewed Plaintiff's available medical records

on May 5, 2014, and August 18, 2014, respectively.  Tr. 102-14, 116-28.  Both Dr.

Robinson and Dr. Beaty found that Plaintiff was capable of superficial contact with the public and moderately limited in his abilities to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and get along with coworkers or peers without distracting them or exhibiting behavioral extreme. Tr. 110-12, 125-26.

The ALJ assigned these opinions significant weight. Tr. 31. The opinion of a non-examining expert "may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan*, 242 F.3d at 1149. Although an ALJ must provide specific and legitimate reasons to reject contradicted medical opinion evidence, the same standard does not apply when the ALJ credits opinion evidence. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); *Bayliss*, 427 F.3d at 1216.

Here, although not required to provide specific and legitimate reasons to credit a medical opinion, the ALJ listed several reasons for crediting Dr. Robinson's and Dr. Beaty's opinions. Tr. 31. For instance, the ALJ noted that

their opinions were consistent with Plaintiff's activities and the normal psychiatric observations, and that Dr. Robinson and Dr. Beaty provided both a narrative description and explanation of the degree and extent of any moderate limitations. While the Court notes that reliance on this last factor—providing both a narrative description and an explanation of the degree and extent of any moderate limitation—is weak because there was little substance to the opinions' narratives, the ALJ rationally found that Dr. Robinson's and Dr. Beaty's opinions were consistent with Plaintiff's activities and normal psychiatric observations.

Plaintiff argues that Dr. Robinson's and Dr. Beaty's opinions are stale because they reviewed the medical opinions and offered their opinions in May and August 2014, respectively, without the benefit of the subsequent medical records, *see, e.g.*, Tr. 374-79 (weight-loss management center); Tr. 380-85 (Mr. Blair's medical source statement); Tr. 386-88 (office visit note); Tr. 389-90 (PAC Redd's physical RFC assessment); Tr. 391-733 (including both pre-and post-2014 medical records. However, Plaintiff fails to identify which post-review records conflict with Dr. Robinson's and Dr. Beauty's opinions and cause them to be prejudicially stale. Moreover, Dr. Moon, whose opinion Plaintiff contends the ALJ wrongly discounted, issued her opinion in May 2014 and thus also did not review these records. Tr. 333-37.

The ALJ's decision to credit Dr. Robinson's and Dr. Beauty's opinions was rationale and supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and is free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

3. The Court enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED December 4, 2018.

<u>*s/Mary K. Dimke*</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 36